**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **KOSS CORPORATION** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:20-cv-00663** |
| | § | |
| **PLANTRONICS, INC. AND** | § | |
| **POLYCOM, INC.,** | § | |
| *Defendants* | § | |

**DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Locations of the parties.................................................................................2

        B.      Relevant accused functionalities..................................................................3

        C.      Key former employees ..................................................................................4

        D.      Current employees and documents ...............................................................6

III.    LEGAL STANDARD............................................................................................7

IV.     ARGUMENT..........................................................................................................8

        A.      This case could have been filed in NDCA.....................................................8

        B.      All private interest factors heavily favor transfer to NDCA. ......................8

                1.      Relative ease of access to sources of proof......................................8

                2.      Availability of compulsory process to secure witness attendance.............10

                3.      Cost of attendance for willing witnesses ......................................11

                4.      Practical problems for an easy, expeditious, and inexpensive case...........12

        C.      The public interest factors are either neutral or weigh in favor of transfer. ..........13

V.      CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
358 F.3d 337 (5th Cir. 2004) ...................................................................................7

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) .................................................................. *passim*

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020).......................................................................*passim*

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)...................................................................8, 11, 14

*In re Horseshoe Ent.*,
337 F.3d 429 (5th Cir. 2003) ...................................................................................7

*KOSS Corp. v. Apple Inc.*,
No. 20-cv-00665-ADA (W.D. Tex. Jul. 2, 2020) ...............................................4, 13

*KOSS Corp. v. Bose Corp.*,
No. 20-cv-00661-ADA (W.D. Tex. Jul. 2, 2020) ...................................................13

*KOSS Corp. v. PEAG LLC*,
No. 20-cv-00662-ADA (W.D. Tex. Jul. 2, 2020) ...................................................13

*KOSS Corp. v. Skullcandy, Inc.*,
No. 20-cv-00664-ADA (W.D. Tex. Jul. 2, 2020) ...................................................13

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)................................................................................8

*Parus Holdings, Inc. v. LG Electronics, Inc.*,
No. 19-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) (Albright, J)............ *passim*

*Sewing v. Stryker Corp.*,
2012 WL 3599459 (S.D. Tex. Aug. 14, 2012) .......................................................12

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).....................................................................................................8

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)................................................................................9

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..................................................................................11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")...................................................7, 11

*In re Volkswagen of Am. Inc.*,
    545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") .......................................7, 8, 10, 11

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................1, 7, 8, 11

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) ............................................................................................10

Fed. R. Civ. P. 45(c)(1)(B) ............................................................................................10

## I.    INTRODUCTION

Defendants Plantronics, Inc. and Polycom, Inc. (collectively, "Poly") respectfully move under 28 U.S.C. § 1404(a) to transfer this patent action out of the Western District of Texas ("WDTX") to the Northern District of California ("NDCA").

This case stands out from the rest.  The accused products, which are no longer manufactured by Poly, were designed and developed at Poly's headquarters in NDCA, in significant part by former employees in NDCA who are not within this Court's subpoena power or any party's control.  By contrast, there is no connection between any of the accused products and WDTX.  For at least two reasons, this litigation presents an even more compelling case for transfer than the Court's recent decision granting transfer to NDCA in *Parus Holdings, Inc. v. LG Electronics, Inc.*, No. 19-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) (Albright, J), and the Federal Circuit's recent decisions compelling transfer in *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020), and in *In re Adobe Inc.*, 823 F. App'x 929 (Fed. Cir. 2020).

First, in this case, the key NDCA witnesses are not just current employees of parties before the Court (like the Google employees in *Parus*, the Apple employees in *Apple*, and the Adobe employees in *Adobe*), but also former employees of Poly who are unaffiliated third parties—including the product managers and marketing manager responsible for designing, developing, and marketing many of the accused products.  These third-party witnesses are not controlled by any party and have declared that they will not attend trial in Texas.  Only a court in NDCA could compel their testimony, which weighs strongly in favor of transfer.

Second, Poly's presence in WDTX is negligible, unlike Google's "large presence" (*Parus*, 2020 WL 4905809, at *7) or Adobe's "two offices in Austin," where "former Adobe employees" had worked (*Adobe*, 823 F. App'x at 930).  Poly has only a single satellite office in Texas, which had no involvement with the accused products, no relevant employees to this case,

and no relevant documents.

Moreover, as in *Parus*, *Apple*, and *Adobe*, the relevant party witnesses and documents are also in NDCA, including any involved employees that have remained at Poly's headquarters in Santa Cruz, California.  Because NDCA is by far the more convenient and appropriate forum for this litigation, and there is no material connection to WDTX, transfer should be granted.

## II.    BACKGROUND

### A.    Locations of the parties

Despite suing in WDTX, Koss has no relevant ties to the State of Texas.  Koss is a Delaware corporation with its principal place of business in Wisconsin.  ECF No. 1, ¶ 2.  There is no evidence that Koss owns any land in Texas, makes any products in Texas, or employs anyone in Texas.  Koss has not even appointed a registered agent in Texas.  *See* Vidal Decl., Exh. 1 (Koss Franchise Tax Account Status, Texas Office of the Comptroller).  Moreover, none of the seven inventors on the face of Koss's asserted patents are in Texas, while one is located in Antelope, California, which is much closer to NDCA than WDTX.  *See id.*, Exh. 2 (inventor LinkedIn profiles and Whitepages results).

As Koss admits, Poly's headquarters and principal place of business is in Santa Cruz, California, which is in NDCA.  ECF No. 1, ¶¶ 5–6; Miller Decl. ¶ 4.  In its complaint, Koss alleges that the asserted patents are infringed by two of Poly's "BackBeat" brand headphone products (the PRO 5100 and FIT 3200).  ECF No. 1, ¶¶ 62, 75, 88, 101.  Recently, Koss accused an additional 13 BackBeat headphone products.  Vidal Decl., Exh. 3.[1]  Poly no longer makes any of these products, but all of Poly's U.S. activities relating to these products were conducted at Poly's Santa Cruz headquarters.  Miller Decl. ¶ 4.  Specifically, although the products were

---

[1] Koss accuses 15 BackBeat models: 500, FIT 300, FIT 350, FIT 500, FIT 2100, FIT 3100, FIT 3150, FIT 3200, FIT 6100, GO 410, GO 600, GO 810, PRO 2, PRO 2 SE, and PRO 5100.  *Id.*

manufactured and physically engineered in China, the conceptual and functional design and development of the products took place exclusively in Santa Cruz.  *Id*.  As detailed below, moreover, former and current employees who were principally involved in designing and developing many of the accused products are also in NDCA.  *Id*. ¶¶ 8, 14.

Poly has only one office in Texas, which is in Austin.  *Id*. ¶ 7.  In contrast to Poly's Santa Cruz headquarters, this office had no involvement with the accused products.  *Id*.  To Poly's knowledge, no employee at the Austin office worked on the accused products, and no documents involving those products are in Austin.  *Id*.  Indeed, other than Poly's Santa Cruz headquarters, no other U.S. office had any role in developing the accused products.  *Id*.

### B.    Relevant accused functionalities

According to Koss, the four patents asserted in this case relate to "wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network."  ECF No. 1, ¶¶ 60, 73, 86, 99.  The accused functionalities of the accused products relate to their alleged connectivity with "an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch."  *Id*. ¶¶ 65, 78, 91, 104.  For three of the asserted patents, Koss's infringement allegations largely focus on the accused products' alleged ability to connect and interact with Apple's Siri service.  ECF No. 1-6 (Compl. Exh. E) at 1, 5–10; ECF No. 1-7 (Compl. Exh. F) at 1–2, 5–6; ECF No. 1-8 (Compl. Exh. G) at 1, 4–9.  Similarly, for the fourth asserted patent, Koss's infringement allegations largely focus on the accused products' alleged ability to connect and interact with music streaming services, such as the Apple Music service.  ECF No. 1-9 (Compl. Exh. H) at 8–9.  As with the overall design and development of Poly's accused products, the conception and design of the accused functionalities and connectivity features took place at Poly's Santa Cruz headquarters.  Miller Decl. ¶ 5.  Likewise, all functional interoperability testing (*e.g.*, the

products' ability to interact with Apple iPhones) was also performed in Santa Cruz.  *Id*.

As Koss has acknowledged, Apple is a California corporation with its principal place of business in Cupertino, California, which is in NDCA.  *Koss Corp. v. Apple Inc.*, No. 20-665-ADA, ECF No. 1 ¶ 5.  Koss has asserted some of the same patents against Apple.  *See id*.  In a related declaratory judgment action filed by Apple in NDCA, Apple recently filed a sworn declaration that the relevant employees who were involved in developing the corresponding accused functionalities in Apple's products and services are in NDCA.  Vidal Decl., Exh. 4 (Apple's Opposition to Koss's Motion to Transfer and accompanying Declaration).

### C.   Key former employees

The accused products, which are no longer made by Poly, were largely designed, developed, and marketed under past leadership that is no longer at Poly, including Victoria Pires, Michelle Viegas, Thomas Criswell, and Eric Kiner.  Miller Decl. ¶ 8.

Victoria Pires was the Senior Product Manager at the time of launch for both BackBeat products accused in the Complaint (PRO 5100 and FIT 3200), as well as several other BackBeat products recently accused by Koss (500, FIT 2100, FIT 3100, and FIT 3150).  *Id*. ¶ 9; Pires Decl. ¶ 3.  Ms. Pires is no longer at Poly and resides in Mountain View, California, in NDCA.  Pires Decl. ¶ 2.  Ms. Pires oversaw the design and development of accused functionalities, including the relevant software and connectivity with smart phones such as Apple iPhones.  Pires Decl. ¶ 4; Miller Decl. ¶ 9.  Ms. Pires was also the direct liaison with Move4Mobile, a Dutch company that was the only third-party entity involved in developing the mobile application for the accused products, the BackBeat App.  *Id*.  Even after launch and until her departure in January 2020, Ms. Pires continued to lead software maintenance and firmware upgrades.  Pires Decl. ¶ 4.

Michelle Viegas was the Product Marketing Manager or Senior Marketing Communications Specialist for several accused products, including those accused in the

Complaint.  Miller Decl. ¶ 10; Viegas Decl. ¶ 3.  Ms. Viegas is no longer at Poly and resides in Santa Cruz, in NDCA.  Viegas Decl. ¶ 2.  Ms. Viegas collaborated closely with product managers and led the marketing efforts for both products accused in the Complaint (PRO 5100 and FIT 3200), as well as other products recently accused by Koss (FIT 3150 and FIT 6100).  *Id*. ¶¶ 3, 5.  Ms. Viegas also authored data sheets, "all hands" presentations for the marketing group, and "core content" (*i.e.*, marketing copy).  *Id*. ¶ 4.  Overall, Ms. Viegas led the marketing of multiple accused products and was in charge of all messaging and promotion, including for the accused connectivity features.  Viegas Decl. ¶ 4; Miller Decl. ¶ 10.

Thomas Criswell was the Senior Product Manager for the entire development of the accused BackBeat GO 410 product and led the initial development of the accused BackBeat FIT 300 and 350 products.  Criswell Decl. ¶ 3; Miller Decl. ¶ 11.  Mr. Criswell is no longer at Poly and resides in Soquel, California, in NDCA.  Criswell Decl. ¶ 2.  Similar to Ms. Pires and Ms. Viegas, Mr. Criswell oversaw or was closely involved in the functional design and development of the relevant connectivity features for these products.  *Id*. ¶ 3.

Eric Kiner was the Product Manager for the entire development of the accused BackBeat GO 600 and GO 810, and was involved in the development and product management of the accused BackBeat FIT 300, FIT 350, PRO 2, and PRO 2 SE.  Kiner Decl. ¶ 3; Miller Decl. ¶ 12.  Mr. Kiner is no longer at Poly and resides in Felton, California, in NDCA.  Kiner Decl. ¶ 2.  Similar to the others above, Mr. Kiner played a key role in the functional design and development of the relevant connectivity features.  *Id*. ¶ 4.

Ms. Pires, Ms. Viegas, Mr. Criswell, and Mr. Kiner have unique knowledge about the design, development, and marketing of the accused products and functionalities, which Poly no longer possesses.  Pires Decl. ¶ 7; Viegas Decl. ¶ 7; Criswell Decl. ¶ 5; Kiner Decl. ¶ 6; Miller

5

Decl. ¶ 13.  Moreover, while the related development documents have remained with Poly in Santa Cruz, Poly's former employees may be the only persons with first-hand knowledge about the development strategies reflected in those documents.  *Id*.

Poly's former employees have declared that they will not willingly attend trial in WDTX. Pires Decl. ¶ 8; Viegas Decl. ¶ 8; Criswell Decl. ¶ 6; Kiner Decl. ¶ 7.  Even if they were willing, travel to Waco would be highly inconvenient for them, especially since all four have full-time jobs, and there are no direct flights between San Jose International Airport (the closest airport to these witnesses) and Waco.  Traveling to Waco would require either an approximately five-and-a-half-hour connecting flight or an approximately three-and-a-half-hour direct flight to Dallas or Austin, followed by an hour-and-forty-minute drive.  *See* Vidal Decl., Exh. 5.  Moreover, Ms. Pires is immunocompromised, and thus at high risk of contracting COVID-19.  Pires Decl. ¶ 9.

**D.      Current employees and documents**

Poly's current employees who were involved with the accused products and accused functionalities are also located in NDCA, where they continue to work at Poly's Santa Cruz headquarters.  Miller Decl. ¶ 14.  In particular, the Human Factors Managers for a number of accused products, who worked on developing the accused interoperability of the accused products with mobile devices and Apple Siri, remain at Poly in NDCA.  *Id*.  Likewise, the Industrial Designers for the accused products, who worked on the products' physical design, including characteristics accused by Koss, also remain at Poly in NDCA.  *Id*.; *see, e.g.*, ECF No. 1-9 (Compl. Exh. H), at 1–7 (accusing physical design of BackBeat FIT 3200 with alleged "curved hanger bar" design).  As with the former employees discussed above, traveling to Waco would impose a far greater burden on Poly's current employees than litigating in NDCA, including due to the flight times mentioned above.  Miller Decl. ¶ 15; Vidal Decl., Exh. 5.

All documents relating to the accused products are also at Poly's Santa Cruz

6

headquarters, or on servers accessible to Poly's Santa Cruz employees.  Miller Decl. ¶ 6.  To

Poly's knowledge, no documents related to the accused products are in Texas.  *Id*. ¶ 7.

### III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or

to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "[O]nce a

party files a transfer motion, disposition of that motion should take top priority in the case."

*Apple*, 979 F.3d at 1337 (citing *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003)).  To

evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been

brought' in the destination venue."  *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir.

2008) ("*Volkswagen II*").  If so, the "[t]he determination of 'convenience' turns on a number of

public and private interest factors, none of which can be said to be of dispositive weight."  *Action

Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private factors include: "(1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious and inexpensive."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*").  The public factors include: "(1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws of the application of foreign law."  *Id*.

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis,

and courts must not give inordinate weight to a plaintiff's choice of venue.  *Volkswagen II*, 545

F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division

appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

## IV.   ARGUMENT

NDCA is the most convenient forum for this case for party and third-party witnesses. Where, as here, "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.   This case could have been filed in NDCA.

As an initial matter, there is no question that this case could have been brought in NDCA, as it is undisputed that Poly is headquartered in that district. *See* ECF No. 1, ¶¶ 5–6. Moreover, the allegedly infringing products have been sold in NDCA. Miller Decl. ¶ 3. Thus, no jurisdictional obstacle prevented Koss from filling suit in NDCA.

### B.   All private interest factors heavily favor transfer to NDCA.

#### 1.   Relative ease of access to sources of proof

As this Court has recognized, "the location of relevant documents and information" remains a relevant factor under Fifth Circuit precedent. *See Parus*, 2020 WL 4905809, at \*3 (citing *Volkswagen II*, 545 F.3d at 316). Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue. *Volkswagen II*, 545 F.3d at 316. This generally turns on which party is most likely to have the greater volume of documents relevant to the case. *See, e.g.*, *id.* at 314–15; *see also Nintendo*, 589 F.3d at 1198. As in most patent cases, Poly, as the accused infringer, will likely possess most of the relevant documents. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)

("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

As discussed above, Poly is headquartered in Santa Cruz, California.  Miller Decl. ¶ 4. All conceptual and functional design, development, and marketing for the accused products took place at Poly's Santa Cruz headquarters.  *Id.*  Likewise, all U.S. documents pertaining to those activities are located in Santa Cruz or on servers accessible to Poly's employees in Santa Cruz. *Id.* ¶ 6.[2]

Moreover, since the accused functionalities largely relate to the accused products' interoperability with Apple Siri, Apple Music, and Apple iPhones, documents possessed by Apple may also be highly relevant.  According to a recently filed declaration by Apple in a related NDCA case involving some of the same patents asserted by Koss here, Apple's documents regarding similar accused functionalities are located at Apple's headquarters in Cupertino, California, which is in NDCA.  Vidal Decl., Exh. 4 at 24.

The first private interest factor thus favors transfer to NDCA, where all of Poly's and Apple's U.S. discovery materials are likely to be located.  *See Parus*, 2020 WL 4905809, at *3 ("Given that LG is the accused infringer . . . , it is likely that LG and Google will have the bulk of the documents relevant to this case in NDCA.  Therefore, the Court finds that the location of the documents relevant in this case weighs towards transfer." (citation omitted)).

---

[2] Any other documents regarding the accused products would be in China, where the products were physically engineered and assembled.  Miller Decl. ¶ 6.  Documents or witnesses in China, however, are not relevant to the transfer analysis.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."); *see also Apple*, 979 F.3d at 1340 ("[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that . . . favors transfer.").

### 2.    Availability of compulsory process to secure witness attendance

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Parus*, 2020 WL 4905809, at *4.  This factor weighs most heavily in favor of transfer when third-party witnesses reside within a transferee venue that has "absolute subpoena power." *Volkswagen II*, 545 F.3d at 316.  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

Here, as discussed above, key third-party witnesses are located in NDCA.  These witnesses include Poly's former employees who were principally involved with many of the accused products—*i.e.*, Victoria Pires (Senior Product Manager), Michelle Viegas (Product Marketing Manager), Thomas Criswell (Product Manager), and Eric Kiner (Product Manager). Pires Decl. ¶ 3; Viegas Decl. ¶ 3; Criswell Decl. ¶ 3; Kiner Decl. ¶ 3; Miller Decl. ¶ 8.  As discussed above, third-party witnesses also include Apple's employees who developed relatedly accused functionalities.  Again, according to Apple's filings in a related NDCA case, these witnesses are in NDCA.  Vidal Decl., Exh. 4.  Moreover, none of the seven named inventors on the asserted patents are in WDTX, and one is in Antelope, California.  *See Id.*, Exh. 2.

These witnesses are within the subpoena power of NDCA courts, but outside of this Court's subpoena power, and thus could not be compelled to testify if this case were to remain in WDTX.  Critically, the witnesses most likely to have information about the accused products—Poly's former employees—are unwilling to testify without a subpoena.  Pires Decl. ¶ 8; Viegas Decl. ¶ 8; Criswell Decl. ¶ 6; Kiner Decl. ¶ 7.  Their unique knowledge regarding these products cannot be obtained from current employees or other sources.  Pires Decl. ¶ 7; Viegas Decl. ¶ 7;

10

Criswell Decl. ¶ 5; Kiner Decl. ¶ 6; Miller Decl. ¶ 13.

This situation thus presents a stronger case for transfer than *Parus*, where the availability of compulsory practice was merely "neutral" because the alleged "non-party witnesses" were at Google, which was a defendant in a related case before this District. 2020 WL 4905809, at *4. By contrast, Ms. Pires, Ms. Viegas, Mr. Criswell, and Mr. Kiner are not employees of any co-defendant. No party can control them or force them to testify, and they have declared they will not testify unless subpoenaed to do so. Because only a court in NDCA could compel these witnesses to attend trial, this factor weighs strongly in favor of transfer. *See Volkswagen II*, 545 F.3d at 316; *see also Adobe*, 823 F. App'x at 931 (compelling transfer where "the inventor and his company were in Northern California, and hence transfer would make providing testimony or documentary evidence more convenient or allow a party to subpoena such information").

### 3.      Cost of attendance for willing witnesses

The convenience of witnesses is "an important factor." *Genentech*, 566 F.3d at 1343. The Federal Circuit has applied the Fifth Circuit's "100-mile" rule in analyzing witness travel in a patent case. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.*; *see also Volkswagen I*, 371 F.3d at 204–05 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which [ ] fact witnesses must be away from their regular employment").

Given this Court's distance from Poly's headquarters, litigating in this District would impose an undue burden on Poly's employee fact witnesses and corporate representatives who may need to testify on technical and financial matters. Miller Decl. ¶ 15. Poly's employees

11

regularly work out of Poly's headquarters in Santa Cruz and live in NDCA, which is more than 100 miles from this Court. *Id.* These witnesses would incur significant travel costs in connection with multiple flights, which would be avoided if the case were in NDCA. *Id.*; Vidal Decl., Exh. 5. Likewise, recent court filings from Apple confirm that NDCA is a far more convenient forum for Apple's employees than WDTX. Vidal Decl., Exh. 4.

Again, however, "it is the convenience of non-party witnesses, rather than of employee witnesses, [ ] that is the more important factor accorded greater weight." *Parus*, 2020 WL 4905809, at *6 (quotation omitted). Here, as discussed, Poly's former product managers and marketing manager for key accused products are in NDCA. Pires Decl. ¶ 2; Viegas Decl. ¶ 2; Criswell Decl. ¶ 2; Kiner Decl. ¶ 2. Even if they were willing to testify in WDTX (which they are not), doing so would be highly inconvenient. Pires Decl. ¶ 9; Viegas Decl. ¶ 9; Criswell Decl. ¶ 7; Kiner Decl. ¶ 8. Apart from flight times, Ms. Pires is immunocompromised and at high risk of COVID-19, which makes traveling across the country not only inconvenient, but life-threatening. Pires Decl. ¶ 9. The extreme inconvenience to such a "complete non-party to the suit" is entitled to "significant weight" in favor of transfer. *Parus*, 2020 WL 4905809, at *6.

**4.      Practical problems for an easy, expeditious, and inexpensive case**

Judicial economy weighs in favor of transfer to NDCA because this case is in its early stages, and transfer at this point would not cause delays. *See Parus*, 2020 WL 4905809, at *6–7 ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited."). Poly has only filed its Answer (ECF No. 20), and Koss has only filed its Complaint and Answer to Poly's Counterclaims (ECF Nos. 1, 25). Apart from this motion, there has been no substantive motion practice. "Nor has this Court obtained any substantial familiarity with the case that would support judicial economy in retaining and trying this suit." *Sewing v. Stryker Corp.*, 2012 WL

12

3599459, at *3 (S.D. Tex. Aug. 14, 2012).

The mere fact that Koss has filed other related suits in this District does not change the result. *See Koss Corp. v. Apple Inc.*, No. 20-665-ADA; *Koss Corp. v. Skullcandy, Inc.*, No. 20-664-ADA; *Koss Corp. v. PEAG LLC*, No. 20-662-ADA; *Koss Corp. v. Bose Corp.*, No. 20-661-ADA. At best, "the presence of co-pending litigation is neutral with respect to transfer." *Parus*, 2020 WL 4905809, at *7. That is particularly true here given the status of those cases, which are in even earlier stages than this one. No other defendant has even filed an answer. Skullcandy and Bose have moved to dismiss for improper venue (No. 20-664-ADA, ECF No. 16; No. 20-661-ADA, ECF No. 20), and Apple has moved to strike Koss's complaint for improper use of confidential information (No. 20-665-ADA, ECF No. 12). Neither of these procedural, defendant-specific motions involves any substantive patent issues, and thus any familiarity the Court may gain from deciding those motions will not promote judicial efficiency in this case. Moreover, to the extent the Court grants Apple's, Bose's, or Skullcandy's motions, these co-pending litigations will disappear. Thus, overall, this factor weighs in favor of transfer.[3]

**C.      The public interest factors are either neutral or weigh in favor of transfer.**

**1.  *Court congestion is neutral.*** In *Apple* and *Adobe*, the Federal Circuit recently held that this factor is neutral when considering a transfer from WDTX to NDCA. *Apple*, 979 F.3d at 1344; *Adobe*, 823 F. App'x at 932. In *Apple*, the Federal Circuit noted that, "[t]o the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved," and "NDCA has historically had a *shorter* time to trial for patent cases." *Apple*, 979 F.3d at 1343–44 (quotation omitted). Moreover, to the extent that "NDCA has more

_____

[3] Consistent with the Federal Circuit's recent guidance in *Apple*, "the administrative difficulties flowing from court congestion" are addressed below "under the first public interest factor," instead of the private interest factors. 979 F.3d at 1343 n.4.

pending cases than WDTX, this fact is, without more, too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. at 1344. In any event, "[b]ecause this factor often calls for speculation, where 'several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.'" *Id*. at 1344 n.5 (quoting *Genentech*, 566 F.3d at 1347).[4]

**2.   *The local interest favors NDCA.*** The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*." *Apple*, 979 F.3d at 1345 (quotation omitted). In *Apple*, for example, there was no dispute that Apple has a "substantial" presence in WDTX, including based on its existing Austin campus and plans "to build a second campus in Austin." *Id*. at 1344. Nevertheless, the Federal Circuit held that these "general contacts with the forum" are "untethered to the lawsuit" and thus entitled to little weight. *Id*. at 1345. Instead, what mattered is that "the accused products were designed, developed, and tested in NDCA," and that "the lawsuit calls into question the work and reputation of several individuals residing in NDCA." *Id*. (quotation omitted). As a result, notwithstanding Apple's presence in WDTX, the Federal Circuit held that "this factor weighs in favor of transfer." *Id*.

This is an even stronger case for finding a local interest in NDCA than *Apple*. While Poly has a satellite office in Austin, it had nothing to do with the accused products. Miller Decl. ¶ 7. As discussed, none of the relevant events that gave rise to this suit occurred in WDTX.

---

[4] Similarly, in *Adobe*, the Federal Circuit rejected the notion that "there is an appreciable difference in docket congestion" between WDTX and NDCA: "Nothing about the court's general ability to set a schedule directly speaks to that issue. Nor does the record demonstrate an appreciable difference in docket congestion between the forums that could legitimately be worthy of consideration under this factor." 823 F. App'x at 932.

14

Instead, as in *Apple*, the products were designed and conceptually developed in NDCA, which is home both to Poly's Santa Cruz headquarters and to current and former employees of Poly. Miller Decl. ¶¶ 4, 8, 14. Moreover, Koss itself lacks any meaningful connection to this District, and has not even appointed a registered business agent in Texas. *See* Vidal Decl., Exh. 1. There is thus no particularized interest in litigating this case in WDTX for either party, which weighs strongly in favor of transfer. *See Adobe*, 823 F. App'x at 930 (compelling transfer out of WDTX where the plaintiff "was not registered to do business in Texas, and it did not appear to have any operations, employees, or customers in Texas").

**3–4.** ***The remaining public interest factors are neutral.*** Patent infringement actions are governed by federal law, and both this District and NDCA are fully capable of addressing the relevant issues. Nor does transfer present any potential conflict of laws because federal patent law will apply regardless of where the case is heard. Thus, at most, these specific factors are neutral, and the public interest factors overall weigh in favor of transfer. *See Parus*, 2020 WL 4905809, at *8 (in granting transfer from WDTX to NDCA, agreeing that "[f]amiliarity of the forum with the law that will govern the case" and "[a]voidance of unnecessary problems of conflict of laws or in the application of foreign law" are both "neutral").

## V.    CONCLUSION

For the reasons set forth above, Poly respectfully requests that the Court transfer this case to the Northern District of California.

15

DATED: December 18, 2020

Respectfully submitted,

*/s/ Katherine Vidal*
Katherine Vidal (admitted *pro hac vice*)
Eimeric Reig-Plessis (admitted *pro hac vice*)
WINSTON & STRAWN LLP
275 Middlefield Road
Menlo Park, CA 94025
Tel. (650) 858-6500
Fax (650) 858-6550
kvidal@winston.com
ereigplessis@winston.com

Samantha M. Lerner (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel. (312) 558-5600
Fax (312) 558-5700
slerner@winston.com

Katrina G. Eash (State Bar No. 24074636)
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel. (214) 453-6500
Fax (214) 453-6400
keash@winston.com

COUNSEL FOR DEFENDANTS
PLANTRONICS, INC. AND POLYCOM, INC.

16

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), I certify that counsel for Defendants conferred with counsel for Plaintiff on November 23, 2020, in a good-faith effort to resolve the matter presented in this motion.  Counsel for Plaintiff stated that it opposes Defendants' motion.

/s/ Katherine Vidal
Katherine Vidal

**CERTIFICATE OF SERVICE**

I certify that on December 18, 2020, a true and correct copy of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) was electronically filed with the Clerk of the Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

/s/ Katherine Vidal
Katherine Vidal

17