**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **KOSS CORPORATION,** § | | |
|     *Plaintiff,* § | | |
| § | | |
| v. § | | **6:20-CV-00663-ADA** |
| § | | |
| **PLANTRONICS, INC. AND** § | | |
| **POLYCOM, INC.,** § | | |
|     *Defendants.* § | | |

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Came on for consideration this date is Defendants Plantronics, Inc. and Polycom, Inc.'s (collectively "Poly") Motion to Transfer to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** Defendant Poly's Motion to Transfer.

### I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.,* No. 2:13-CV-749, 2014 U.S. Dist. LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014) (stating the movant has the "evidentiary burden" to establish "that the desired forum is clearly more convenient than the forum where the case was filed"). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly more convenient*. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n. 10 (5th Cir. 2008) (hereinafter "*Volkswagen II*") (emphasis added). The Court finds that Poly has satisfied its significant burden to establish that NDCA is a *clearly more convenient venue* and transfer is warranted.

## II. LEGAL STANDARD

### A. Section 1404 Transfer

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy").

### III. BACKGROUND

Plantronics, Inc. and Polycom, Inc. are Delaware Corporations with their principal places of business in Santa Cruz, California. Pl.'s Compl., ECF No. 1 at ¶¶ 5–6. In 2018, Plantronics acquired Polycom. *Id*. at ¶ 7. Plantronics and Polycom conduct their combined operations under the name "Poly." *Id.* Poly has one office in Austin, Texas where it sells, develops, and markets its products. *Id*. at ¶ 8. However, Poly contends that its presence in the Western District and its "satellite office" in Texas had no involvement with the accused products, no employees relevant to this case, and no relevant documents. Def.'s Mot., ECF No. 29 at 1.

Plaintiff Koss Corp. is a Delaware Corporation with its principal place of business in Milwaukee, Wisconsin. Pl.'s Compl. at ¶ 2. Koss markets a line of headphones and audio

accessories that are sold in at least eight cities in the Western District of Texas, including Waco. *Id*. at ¶ 3. However, Koss owns no land, makes no products, and employs no personnel in Texas. Def.'s Mot. at 2.

Koss filed this lawsuit on July 22, 2020, alleging patent infringement against Poly for making, having made, using, importing, supplying, distributing, selling, or offering to sell its Blackbeat-branded headphones ("the Accused product"). Pl.'s Compl. at ¶¶ 63, 76, 89, 102. Specifically, Koss alleges infringement of U.S. Patent Nos. 10,206,025 ("'025 patent"), 10,368,155 ("'155 patent"), 10,469,934 ("'934 patent"), 10,506,325 ("'325 patent"). *Id*. Koss asserts that these patents relate to "the wireless headphone and wearable technology space." *Id*. at ¶ 56.

On December 18, 2020, Poly filed this motion to transfer venue under 28 U.S.C. § 1404(a). Def.'s Mot. at 1. Specifically, Poly requests that this Court transfer the instant case from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA"). *Id*.

## IV. ANALYSIS

As a preliminary matter, neither party contests the fact that venue is proper in NDCA and that this case could have been filed there.

**A. The Private Interest Factors Weigh In Favor of Transfer.**

*i. The Relative Ease of Access to Sources of Proof*

Poly argues that the relative ease of access to sources of proof favors transfer to NDCA. Def.'s Mot. at 9. Specifically, Poly notes that all U.S. documents pertaining to the conceptual and functional design, development, and market of the accused products are located within NDCA in Santa Cruz, California. *Id*. Further, Poly notes that third-party documents—

particularly Apple's documents concerning Apple Siri, Apple Music, and Apple iPhones—potentially relevant to this case are also located in NDCA. *See generally*, Def.'s Mot.

In response, Koss attacks Poly's argument that all relevant U.S. documents are located in NDCA by noting that "like most international corporations, Poly is set up to allow the share of relevant information to whatever location that needs the information." Pl.'s Opp. at 5–6. Koss further suggests that the memories of deposition witnesses have proven faulty. *Id*. at 6. Consequently, Koss infers that such witnesses are unlikely to or need not testify at trial. *Id*. Moreover, Poly argues that WDTX is in fact more convenient than NDCA. *Id*. Specifically, Koss observes that its IT vendor, Synectics, is located in Texas. *Id*. at 7. The servers, where Koss's alleged relevant documents are located in Dallas in the Northern District of Texas. *Id*.

In reply, Poly correctly notes that this factor concerns the physical location of relevant documents and not their general accessibility. Def.'s Reply at 1. Furthermore, Poly observes that Koss only shows that relevant documents *were* accessible in a number of cities outside the U.S. but does not show that the documents were ever accessed from Texas. *Id*. Additionally, Poly argues that Koss has incorrectly conflated two issues. *Id*. Specifically, Poly alleges that Koss's treatment of witnesses as sources of proof is inappropriate and that the present factor only relates to the ease of access of non-witness evidence. *Id*. at 2. Moreover, Poly argues that the location of documents held by Koss's IT vendor, Synectics, is irrelevant. *Id*. Poly notes that the Federal Circuit has rejected the use of vendors "to create 'a fiction' that documents are stored in Texas." *Id*. (quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009)). Finally, Poly notes that, to prevail on this factor, it does not need to demonstrate that each and every relevant document is located in NDCA. *Id*. Consequently, Poly concludes that this factor weighs heavily in favor of transfer.

This Court determines that this factor weighs in favor of transfer. First, we address Koss's attack on the credibility of Poly's witnesses. It is not proper for this court, when considering a motion to transfer venue, to probe the credibility of witnesses. *See RMail Ltd. V. DocuSign, Inc.*, No. 2:11-cv-299-JRG, 2012 WL 1416299, at *3 (E.D. Tex. Apr. 24, 2012) (noting that regardless of the weight a fact-finder may give a witness at trial, their status in the court's venue analysis is not altered because the movant claims their future testimony is irrelevant and that such aspersions cannot draw the Court's analysis into a speculative discounting of a witness's value). Thus, Koss's attempt to discount the memories of Poly's witnesses is not relevant to the Court's analysis here. Instead, this Court leaves such determinations to the ultimate fact-finder.

Second, Poly overstates the scope of the Federal Circuit's holding in *In re Hoffman-La Roche*. There, the Federal Circuit did not hand down a blanket, categorical ban on using vendor documents. Rather, the Federal Circuit's concern was that the nonmovant relocated a number of its documents from California to Texas to "manipulate the propriety of venue." *Hoffman*, 587 F.3d at 1336–37. The court noted that "section 1404(a) should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient, and just." *Id*. (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964)) (internal quotes omitted). The Federal Circuit then reasoned that a "plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities." *Id*. Here, Poly does not allege that either Koss or Synectics moved these documents to Synectics's Texas servers in preparation for litigation or the motion at hand. Thus, Poly's reliance on *Hoffman* is misplaced.

Third, this Court rejects Koss's argument that the location of Poly's documents is less relevant because they are accessible from any Poly office. Fifth Circuit precedent makes clear that this factor speaks to the *physical location* of documents; it does not concern the locations from which such documents are accessible. *See In re Genentech*, 556 F.3d 1338, 1345 (Fed. Cir. 2009) ("[T]he place where the defendant's documents are kept weighs in favor of transfer to that *location*.") (emphasis added). Although this Court views this precedent as at odds with the realities of modern patent litigation, until the Fifth Circuit changes this precedent this Court is bound by that rule.

Having dispensed with these preliminary matters, this Court now weighs the arguments and evidence germane to this factor. After carefully reviewing both, this Court determines that this factor favors transfer to NDCA. This Court agrees with Poly that its engineering documents—pertaining to the design and development of the accused features and products—and Apple's documents weigh in favor of transfer. However, we do not agree with Koss that its documents on Synectics's servers weigh against transfer. Those documents are not even stored within this district. Instead, Synectics's servers are located in Dallas within the Northern District of Texas. Poly's showing that additional, third-party documents—Apple's documents—are located in NDCA further tips the scales in favor of transfer. Consequently, Poly has pointed to both party and non-party sources of proof that are located in NDCA whereas Koss has not identified any sources of proof from this District. Thus, this Court concludes that the relative access to sources of proof weighs in favor of transfer.

*ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Poly contends that the availability of compulsory process weighs strongly in favor of transfer to NDCA. Def's Mot. at 11. Poly identifies four of its former employees that it intends

to call as witnesses. Def's Mot. at 10. Specifically, Victoria Pires—a former Poly Senior Product Manager—supervised the "design and development of accused functionalities, including the relevant software and connectivity with smart phones such as Apple iPhones." *Id*. at 4. But Poly notes that Ms. Pires lives in Mountain View, California in NDCA. *Id*. Further, Poly maintains that Ms. Pires, as well as three other third-party witnesses, will not testify unless compelled to do so by subpoena. *Id*. at 10.

Poly further contends that because its former employees are not currently employed by a codefendant Poly's case for transfer is stronger than the case for transfer in *Parus*. *Id*. at 11. While in *Parus* the third-party witnesses were employees of the co-defendant, the third-party witnesses, here, are not. *Id*. Since the decision in *Parus* indicated that the availability of compulsory process was neutral, the Court determine that the factor favors transfer in light of Poly's stronger showing. *Id*.

Koss argues that its third-party vendor, Synectics, and its key contact, Mr. Tom Petrone, fall within this Court's subpoena power whereas they do not fall within the subpoena power of NDCA. Pl.'s Opp. at 7. Mr. Petrone is the co-owner of Koss's IT vendor Synectics. *Id*. Moreover, Koss argues that Poly's alleged key third-party witnesses are, in fact, all equally suited to provide the same testimony. *Id*. at 8. Thus, Koss concludes, "the ability to compel these [witnesses] to attend trial is of little consequence." *Id*. Koss further contends that Hytham Alihassan resides in Austin, Texas. *Id*. Since Mr. Alihassan lives within this Court's subpoena power and outside that of NDCA, Koss contends that his testimony, as well as that of Mr. Petrone, weigh against transfer. *Id*. at 9.

In its Reply, Poly argues that the availability of compulsory process to secure witnesses heavily favors transfer. Pl.'s Reply at 2. Specifically, Poly notes that NDCA has subpoena power

over Michael Sagan, a key inventor witness, as well as four third-party witnesses. *Id*. While Koss argues that Poly's witnesses did not reveal specific knowledge critical to the merits of the case, Poly responds by noting that this argument is legally and factually deficient. *Id*. Poly notes that the Fifth and Federal Circuits have held that movants need not prove specific knowledge of a potential witness. *Id*. at 3. Poly argues that Koss's arguments are factually deficient by noting that witnesses were provided with a broad and unanswerable memory test. *Id*. Nevertheless, the witnesses indicated that they had special knowledge pertaining to the accused products and features. *Id*.

Poly replies to Koss's argument that the relevance of Poly's witnesses is undercut by the fact that the accused features were designed abroad; Poly notes that the engineering—albeit performed outside the U.S.—was directed by these former employees. *Id*. at 4. Thus, Poly argues that the product managers that it offers as witnesses have more important information than the foreign engineers who also worked on the accused products. *Id*.

Poly summarizes by asserting that there are no relevant witnesses in WDTX. While Koss asserts that Mr. Alihassan has relevant information, it has provided no indication of what that information is. *Id*. Poly also disputes whether Mr. Petrone has any important information to offer. *Id*. Consequently, Poly argues that the availability of compulsory process weighs in favor of transfer. *Id*.

This Court determines that the available sources of proof weighs in favor of transfer. This Court affords party witnesses little weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010). Such witnesses—especially employee witnesses—are given little weight because the Parties can compel them to testify at trial. *Gardipee v. Petroleum Helicopter*, 49 F. Supp. 2d 925, 929 (E.D.

Tex. 1999). Conversely, because the Parties cannot compel third-party witnesses to testify in the way they can compel their employee witnesses, the convenience of third-party witnesses is given considerable weight. *See id*. Importantly, this Court attaches weight to this factor to the extent that the third-party witnesses are unwillingly to testify. *Turner v. Cincinnati Insurance Co.*, No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *3 (W.D. Tex. Jan. 1, 2020) ("[T]he compulsory process factor weighs against transfer when neither side claims a witness would be unwilling to testify.") (citing *Peregrine Myanmar Ltd. V. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)).

Here, Poly offers four third-party witnesses. All of these witnesses—Ms. Pires especially—have key testimony; Ms. Pires, Mr. Criswell, and Mr. Kiner all played a role in the design and development of the accused products or features. Def.'s Mot. at 5. Ms. Michelle Viegas led the marketing of multiple accused products and features. Thus, Poly's third-party witnesses have relevant testimony to give. The witnesses have also indicated that they are unwilling to travel to WDTX unless compelled to do so. Consequently, this Court determines that Poly's third-party witnesses weigh heavily in favor of transfer.

In contrast, Koss—in its brief—points to only two witnesses: Mr. Petrone and Mr. Alihassan. Mr. Alihassan, as a Poly employee, is a party witness and, thus, this Court affords him little weight in this analysis. Mr. Petrone, however, is a third-party witness. With that said, Mr. Petrone is unlikely to testify as the evidence sought from Synectrics concerns documents stored on its servers.

Thus, Koss has four relevant third-party witnesses who are all unwilling to testify if trial is held in WDTX. However, Koss presents one party witness and a third-party witness who is unlikely to testify at trial. Consequently, this Court determines that this factor weighs in favor of transfer.

### *iii. The Cost of Attendance for Willing Witnesses*

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1342. The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-00693-JRG-RSP, 2017 WL 4155236, at *5 (E.D. Tex. Sep. 19, 2017). The convenience of party witnesses is given little weight. *Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

Poly argues that this factor also weighs in favor of transfer. Def's Mot. at 12. Poly argues that this venue is inconvenient for its employee witnesses, who must travel from Poly's headquarters in NDCA to WDTX. *Id*. 11–12. Moreover, Poly once again raises its non-party witnesses, particularly Ms. Pires. *Id*. at 12. These witnesses would have to deal with long flight times and for Ms. Pires—who is immunocompromised—this could prove hazardous. *Id*.

In response, Koss argues that the witnesses that Poly cites should be given little weight. Pl.'s Opp. at 9. Specifically, Koss reiterates that Poly's former employees have "no unique relevant knowledge that makes them important to the case." *Id*. Additionally, Koss contends that its Synectics witnesses and Mr. Alihassan established that WDTX is a more convenient venue for willing witnesses. *Id*. at 9–10. Finally, Koss observes that the cost of room and board in Waco is much lower than that in NDCA. *Id*. at 10.

In reply, Poly observes that Koss's argument regarding the cost of attendance of willing witnesses merely rehashes its arguments concerning the availability of compulsory process. Pl.'s Opp. at 4. While Koss argues that little weight should be given to Poly's party witnesses, Poly responds by noting that requiring a large number of employees to travel a significant distance

from their homes would incur a substantial cost that would be avoided by simply transferring the case. *Id*.

This Court determines that this factor weighs in favor of transfer. Beginning with party witnesses, Poly asserts that NDCA is more convenient for its employee witnesses whereas Koss asserts that WDTX is more convenient for its party witnesses. Importantly, Mr. Alihassan—a Poly employee—is a party witness; thus, this Court affords Mr. Alihassan's convenience little weight as to determining this factor. Since both parties have witnesses from each district, the Parties' employee witnesses—if they do not weigh in favor of transfer—at the very least are neutral.

This Court now examines the third-party witnesses. Poly points to four witnesses that have information relevant to the design and development of the accused products and features. Even if this Court determines that Ms. Pires, Mr. Kiner, and Mr. Criswell all have duplicate testimony, it is at least clear that the information that they would offer is distinct from what Ms. Viegas would offer. Thus, Poly identifies at least two third-party witnesses for whom trial in NDCA would be more convenient and less costly. Koss on the other hand offer Mr. Petrone as a third-party witness. However, Mr. Petrone is unlikely to testify at trial. Koss offers Mr. Petrone primarily because he is the co-owner of Synectics—Koss's IT vendor. But all of Synectics's relevant information is contained in electronic documents stored on its Dallas servers. Apart from this, Koss does not statee what Mr. Petrone would testify to at trial. Consequently, Poly offers at least two third-party witnesses with varied information for whom NDCA would be less costly and more convenient, whereas Koss provides only one third-party witness—who will likely not be called upon to testify—for whom WDTX would be more convenient. Thus, this Court determines that the third-party witnesses weigh in favor of transfer.

Since the party witnesses are at least neutral and the third-party witnesses weigh in favor of transfer, this Court determines that the cost to witnesses factor weighs in favor of transfer.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

Poly argues that judicial economy favors transfer because this case is in its early stages. Def.'s Mot. at 12. Moreover, Poly contends that Koss cannot inoculate itself against transfer via filing multiple related law suits in this court. *Id* .at 13. Further, Poly observes that its co-defendants have also filed motions to transfer. *Id*. Specifically, Bose and Skullcandy have filed motions to dismiss for improper venue whereas Apple has filed a motion to transfer to NDCA. *Id*. Thus, to the extent that co-pending litigation weighs against transfer, that weight is undercut by the filing of motions to transfer. *Id*.

In response, Koss argues that NDCA has not held a patent trial in almost a year. Pl.'s Opp. at 10. Further, Koss attempts to undermine Poly's contention that this case is still in the early stages of litigation; particularly, Koss asserts that "[t]he parties have been actively involved in advancing this case towards trial over the last six months" and that transferring this case will result in a delayed trial date. *Id*. Moreover, Koss appeals to co-pending litigation; Koss has filed related suits against four other defendants. *Id*. Koss further notes that it filed all co-pending suits concurrently and that Poly has not submitted any petitions for *Inter Partes* Review regarding the patents-at-issue. *Id*. at 10–11.

Poly argues that all other practical problems favor transfer. Pl.'s reply at 5. Specifically, Poly argues that this case is still in its early stages. *Id*. In reply to Koss, Poly notes that although the parties have proposed preliminary claim constructions, this does not constitute effort on the part of the Court. *Id*.

This Court determines that this factor weighs slightly against transfer. This Court has recently decided to deny Apple's motion to transfer venue. Consequently, at least one co-pending litigation has been retained by this Court. Retaining this case in WDTX would promote judicial economy by avoiding duplicate procedures such as claim construction for example.

As to Poly's argument that this litigation is still in its early stages. This Court notes that the proper inquiry under § 1404(a) is what is most convenient for the Parties and witnesses. *Turner*, 2020 WL 210809, at *5. While the Court agrees with Poly that the Parties' proposals of preliminary claim constructions has not required any act on the part of this Court, it is nonetheless an act of the Parties and thereby relevant to this analysis. Further, even if this Court finds that this case is still in the early stages of litigation; this is not a positive reason in favor of transfer. After all, wherever this Court transfer the instant case the litigation will be in its early stages as to that district. Thus, Poly's showings on this matter do not show how this factor to some extent weighs in favor of transfer; rather, Poly's arguments merely mitigate Koss's arguments above concerning co-pending litigation.

Thus, the existence of co-pending related litigation in this district weighs against transfer whereas the fact that this case in the early stages of litigation is merely neutral. Consequently, the Court determines that this factor weighs slightly against transfer.

**B. The Public Interest Factors Weighs in Favor of Transfer.**

*i. Administrative Difficulties Flowing From Court Congestion*

Poly argues that Court congestion is neutral. Def.'s Mot. at 13. Poly argues that the Federal Circuit has ruled that this factor is neutral as to transfers from WDTX to NDCA. *Id*. Additionally, Poly argues that NDCA has historically decided cases faster than WDTX. *Id*.

Finally, Poly notes that this factor lends itself to speculation and, therefore, should not be used to override the other factors. *Id.* at 14.

Koss responds by asserting that WDTX has advanced cases to trial and reduced court congestion in a manner that NDCA has not. Pl.'s Opp. at 11. Koss emphasizes that the touchstone for this factor is "the speed with which a case can come to trial and be resolved." *Id.* (quoting *In re Apple*, 929 F.3d 1332, 1343 (Fed. Cir. 2020)). Koss asserts that the time-to-trial has been determined in this District but is unknown in NDCA. *Id.*

This Court determines that this factor slightly weighs against transfer. This Court acknowledges the Federal Circuit's warning that this factor is the most speculative. *In re Genentech*, 566 F.3d at 1347. But, nonetheless, it is unquestionable that WDTX is advancing cases through the trial phase and alleviating docket congestion, whereas NDCA is not. Pl.'s Opp. at 11. Because this fact weighs against transfer and Poly does not dispute this contention in its reply, this Court determines that this factor weighs against transfer.

## ii. *Local Interest in Having Localized Interests Decided at Home*

Poly argues that NDCA has a strong local interest in deciding this case. Def.'s Mot. at 14. Poly first notes that mere presence within a district is not sufficient to establish a local interest; rather, there must be a connection between the facts of the case and the venue district. *Id.* Poly notes that such connections here are especially tenuous. *Id.* Specifically, Poly has only a small, satellite office in Austin. The accused products were designed and engineered in NDCA, where Poly's principal offices are. *Id.* Additionally, the plaintiff, Koss, has not substantial contacts with this district. *Id.* at 15.

In response, Koss argues that Poly has provided no evidence as to what activities its Austin office performs. Pl.'s Opp. at 11. Specifically, Koss contends that Mr. Tom Puorro is the

general manager of Poly's Austin office and that he leads product development. *Id*. at 12. Regardless of the relevance of these activities, Koss argues that Poly's presence within this District on its own weighs against transfer. *Id*. at 12. Koss notably does not address the extent to which NDCA has a local interest in resolving this case.

Poly responds by noting that Koss's argument that Mr. Puorro's testimony matters clashes with its prior claim that the testimony of product managers—particularly Victoria Pires and the other former employee witnesses—is less weighty than that of engineers. Pl.'s Reply at 5. Further, Poly notes that the accused products and features are discontinued, Mr. Puorro works in McKinney, Texas outside WDTX, and Mr. Puorro has only worked for Poly since 2019. *Id*. Finally, Poly concludes by noting that none of its Texas employees, including Mr. Puorro, has every worked on the accused products. *Id*.

This Court determines that this factor weighs in favor of transfer. Notably, this factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). Poly has noted that the accused products and features were designed and developed in NDCA. While Koss has asserted that Tom Puorro is a product development lead in Poly's Austin office, Koss has not provided sufficient evidence indicating that Mr. Puorro oversaw the development of the accused features or products. To the contrary, Poly has stated that none of its Texas employees have worked on the accused product. Thus, the facts that gave rise to this suit have more connections with NDCA than they do with WDTX. Consequently, this Court determines that the instant factor weighs in favor of transfer.

***iii. Familiarity of the Forum With the Law That will Govern the Case***

The parties contend, and this Court agrees, that this factor is neutral.

*iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

The parties contend, and this Court agrees, that this factor is neutral.

## V. CONCLUSION

The Public Factors weigh in favor of transfer. Specifically, the parties assert and this Court agrees that two of the factors are neutral. While this Court has determined that the court congestion factor slightly weighs against transfer, this Court has held that the local-interest factor definitively weighs in favor of transfer. After carefully weighing these factors against each other in light of the Parties' showings as to both, this Court concludes that the Public Factors weigh in favor of transfer.

Moreover, the private factors weigh decidedly in favor of transfer. All of the private factors, other than the practical-problems factor, weigh in favor of transfer. However, the Federal Circuit has noted that the practical-problems factor should not be relied upon to override the other factors. *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb 23, 2017). Thus, where Poly has provided strong showings in the other three private factors, this Court declines to override those factors in light of Koss's stronger showing as to the practical-problems factor. For these reasons, this Court determines that the Private Factors decidedly weigh in favor of transfer.

It is therefore **ORDERED** that Poly's Motion to Transfer to the Northern District of California is **GRANTED**.

SIGNED this 20th day of May, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE